Case 8:25-cv-01026-SRM-DFM   Document 12   Filed 05/23/25   Page 1 of 12   Page ID #:50

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

MAY 23 2025

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA**

DON MACALLISTER, Pro Se Plaintiff, 21163 Newport Coast Drive, #1010 Newport Coast, CA 92657 📞 (310) 924-1303 ✉ donmacallister8@gmail.com

v.

**PRUDENTIAL GLOBAL INVESTMENT MANAGEMENT (PGIM); GOLDENTREE ASSET MANAGEMENT; CONTRARIAN CAPITAL MANAGEMENT; CITIGROUP INC.; JPMORGAN CHASE & CO.; GOLDMAN SACHS GROUP INC.; MORGAN STANLEY; BANK OF AMERICA MERRILL LYNCH; DEUTSCHE BANK; CREDIT SUISSE,** Defendants.

**Case No.: 8:25-cv-01025-SRM-DFM**

**FIRST AMENDED COMPLAINT FOR DAMAGES, EQUITABLE RELIEF RELATED TO PRIOR SETTLEMENT CONTEXT, FRAUDULENT ENRICHMENT, UNDERMINING OF WHISTLEBLOWER ACTIVITY, AIDING AND ABETTING FRAUD, CIVIL CONSPIRACY, AND UNJUST ENRICHMENT**

## I. INTRODUCTION

1. Plaintiff Don Macallister brings this action against the following U.S. financial institutions and asset managers (collectively "Defendants"): Prudential Global Investment Management (PGIM); GoldenTree Asset Management; Contrarian Capital Management; Citigroup Inc.; JPMorgan Chase & Co.; Goldman Sachs Group Inc.; Morgan Stanley; Bank of America Merrill Lynch; Deutsche Bank; and Credit Suisse.

2. These Defendants knowingly underwrote, facilitated, and profited from over $7 billion in bond issuances and loans by Digicel Group and its affiliates between 2012 and 2025. This occurred despite Plaintiff's repeated and documented whistleblower warnings, including **detailed reports to the US Department of Justice (Exhibit B: Civilian Crime Report dated May 27, 2020 )** and **US Securities and Exchange Commission (Exhibit C: Form TCR dated May 23, 2020 )**\*\*, alleging that Digicel's telecom empire was built upon felony criminal bribery schemes and false declarations. These warnings included, but were not limited to, a direct call with US SEC attorneys on July 21, 2015, which directly resulted in Digicel Group withdrawing its attempted fraudulent Initial Public Offering (IPO). This call and its impact were confirmed by the SEC Office of the Whistleblower correspondence dated July 21, 2015 (**Exhibit D**).

3. Plaintiff, a verified early-stage investor in Digicel Group, provided a distinct €100,000 investment on June 25, 2003, which was demonstrably received by Digicel but has been wrongfully withheld for over 21 years, now valued at an estimated $25 million USD with compounded returns. Simultaneously, Defendants generated hundreds of millions of dollars in fees, commissions, and spreads from Digicel's debt offerings, directly benefiting from the very fraudulent enterprise Plaintiff sought to expose and from which Plaintiff was unjustly denied his rightful investment.

4. In 2025, Digicel Group voluntarily disclosed to the U.S. Department of Justice (DOJ) that it had, in fact, obtained telecom licenses across up to 40 jurisdictions through felony criminal bribery schemes (**Exhibit B**)—unequivocally validating the Plaintiff's long-suppressed allegations and negating the premise of a prior defamation lawsuit filed against him by Digicel principals, which resulted in a settlement obtained through the active concealment of this very fraud (Exhibit A: Settlement Agreement and Release dated January 6, 2014 in *Macallister v. O'Brien et al.*, Case No. 8:25-cv-00965-DOC-(KESx)).

5. This lawsuit seeks substantial compensatory and punitive damages, along with full disgorgement of ill-gotten profits, from the Defendants who chose to prioritize financial gain over accountability, knowingly disregarded clear red flags and Plaintiff's direct warnings, and actively aided the expansion of Digicel's fraud-based telecom empire at the direct expense of the Plaintiff. This action also seeks equitable relief related to the context of the prior settlement agreement, demonstrating how Defendants profited from a fraud that Digicel actively concealed, impacting Plaintiff's ability to fully pursue his rights at that time.

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1332 (diversity of citizenship) and supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367.

7. Venue is proper in the Central District of California under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, and Plaintiff resides in this District.

## III. PARTIES

8. **Plaintiff:** Don Macallister, a U.S. citizen residing in Newport Coast, California. Plaintiff is a pro se litigant, a foster care survivor, a U.S. Congressional Tribute Honoree, and an original investor in Digicel Group.

9. **Defendants:** The following U.S. financial institutions and asset managers, each of whom directly underwrote, marketed, traded, and/or profited from the bond and loan issuances by Digicel Group and its affiliates between 2012 and 2025:
   - Prudential Global Investment Management (PGIM)
   - GoldenTree Asset Management
   - Contrarian Capital Management
   - Citigroup Inc.
   - JPMorgan Chase & Co.
   - Goldman Sachs Group Inc.
   - Morgan Stanley
   - Bank of America Merrill Lynch (BofA Merrill Lynch)
   - Deutsche Bank
   - Credit Suisse

## IV. INTERESTED PARTIES

10. Pursuant to Local Rule CV-30, the following parties have a financial or other interest in the outcome of this litigation:
    - Don Macallister: Plaintiff
    - Prudential Global Investment Management (PGIM): Defendant
    - GoldenTree Asset Management: Defendant
    - Contrarian Capital Management: Defendant
    - Citigroup Inc.: Defendant
    - JPMorgan Chase & Co.: Defendant
    - Goldman Sachs Group Inc.: Defendant
    - Morgan Stanley: Defendant
    - Bank of America Merrill Lynch (BofA Merrill Lynch): Defendant
    - Deutsche Bank: Defendant
    - Credit Suisse
    - Digicel Group Ltd.: Non-party corporate entity central to the alleged fraudulent schemes and financial transactions.
    - Denis O'Brien Jr.: Non-party individual, founder of Digicel Group, central to the alleged fraudulent schemes and prior settlement agreement.

## V. FACTUAL BACKGROUND

11. In 2002, Plaintiff made an initial investment of $100,000 USD in Digicel, which was subsequently exercised in 2007.
12. On June 25, 2003, Plaintiff personally delivered a separate investment in the form of Bank of Ireland draft no. 441834, amounting to €100,000 EUR, to Denis O'Brien Jr. at Digicel's Dublin office. This distinct investment was deposited by O'Brien into a Bank of Ireland account on July 3, 2003, and its receipt is independently verifiable through banking records and admissions by Denis O'Brien in prior legal pleadings (e.g., *[Cite specific pleading/paragraph in prior case if known]*) Plaintiff and his wife were direct witnesses to this transaction.
13. Despite irrefutable documentation of receipt, Denis O'Brien Jr. and Digicel have consistently denied Plaintiff's rightful equity interest, falsely claiming the 2003 investment was a "duplicate" of the 2002 stake—a baseless assertion contradicted by the separate nature and timing of the transactions.
14. Plaintiff filed a detailed complaint with Irish authorities (Garda Bureau of Fraud Investigation, Ref: FB11.27/13 53x13), providing substantial evidence including the canceled bank draft, banking confirmations, witness testimony, and email correspondence.
15. Between 2010 and 2025, Plaintiff undertook extensive efforts to warn U.S. regulators, the United Nations, and the Defendant financial institutions about the criminal bribery schemes perpetrated by Denis O'Brien Jr. and Digicel to secure telecom licenses. These warnings included, but were not limited to:
    - A direct call with US SEC attorneys on July 21, 2015, which resulted in Digicel Group withdrawing its attempted fraudulent IPO. This warning, documented in

Plaintiff's Fraud Report to US SEC (**Exhibit C**, dated May 23, 2020 ), explicitly detailed Digicel's bribery schemes and their impact on the legitimacy of Digicel's financial instruments, and was confirmed by the SEC Office of the Whistleblower correspondence dated July 21, 2015 (**Exhibit D**).
- Public whistleblower emails dated December 23, 2019, explicitly identifying Digicel bonds by their CUSIP and ISIN numbers (**e.g., 25381VAA5, AX5410664**), thus providing direct notice to any entity trading or holding these specific instruments.
- A letter dated February 15, 2020, addressed to the White House Chief of Staff, urging the U.S. Department of Justice to investigate Digicel's corrupt practices (**Exhibit B: Civilian Crime Report dated May 27, 2020** ). The report also notes that "Bankruptcy 20-11207-scc is fraudulent" and that the "Filer is failing to disclose to SDNY and SEC filer is on trial for bribery and corruption before Justice Pilkington in case 2001-9223".
- Direct communications with Telstra and the acquiring entities of Digicel Pacific, as well as the UN Broadband Commission, detailing the bribery and false declaration schemes.

16. **Crucially, these warnings were disseminated to the Defendant financial institutions, or were public information that, given their due diligence obligations, Defendants knew or should have known about, prior to and during their underwriting and facilitation of Digicel's bond and loan issuances.**
17. Despite these explicit and timely warnings, and with actual knowledge of, or reckless disregard for, the underlying bribery and fraud, the Defendant financial institutions proceeded to underwrite, trade, and profit from the following Digicel debt instruments, which were directly predicated on the fraudulently obtained telecom licenses:
    - Digicel International Finance Ltd bonds issued in 2019 (CUSIPs: 25381VAA5, AX5410664).
    - Digicel Group One Ltd and Group Two Ltd bonds (CUSIPs: 25382DAA4, 25382FAA9, 25382FAB7, and others).
    - Over $1.3 billion in loans and in excess of $7 billion in total bond issuances, the valuations of which were directly inflated by the illegally secured telecom licenses.
18. The Defendants profited from these transactions in various ways, as detailed below, and for each transaction, Defendants knew or recklessly disregarded Plaintiff's warnings of underlying fraud:
    - **Prudential Global Investment Management (PGIM), GoldenTree Asset Management, and Contrarian Capital Management:** These firms, listed as defendants, took a controlling equity stake in Digicel Group as part of its January 2024 debt restructuring. They swapped approximately $1.7 billion of Digicel's debt for an initial 62% equity stake, which was set to increase to 90% as bondholders participated in a $110 million rights issue and further backstop agreement. As part of this restructuring, Digicel also issued a new senior secured first-lien term loan facility of approximately $1 billion and $1.25 billion of senior secured bonds due May 2027. As the new controlling equity holders and

significant creditors, these firms effectively structured and implemented these new capital components, signifying direct and substantial financial benefit through equity ownership and interest income from the new debt, despite their knowledge or reckless disregard of the underlying fraudulent foundation, especially given the public record of Plaintiff's prior warnings and the IPO withdrawal.

- **Citigroup Inc. (Citi), JPMorgan Chase & Co. (J.P. Morgan), Credit Suisse, Deutsche Bank, and Barclays (Barclays Capital):** These firms are listed as defendants and served as major underwriters and initial purchasers of Digicel's early debt offerings and its attempted IPO, directly profiting from underwriting fees and commissions.
  - In December 2009, Citi, J.P. Morgan, and Credit Suisse acted as joint book-runners for Digicel Ltd.'s $500 million corporate bond offering of 8.25% senior notes due 2017. This occurred at a time when Plaintiff's allegations of bribery were already actively being reported to relevant authorities and were accessible through public record and diligence.
  - In February 2011, Credit Suisse, Citi, J.P. Morgan, Deutsche Bank, and Barclays Capital were initial purchasers for an additional $300 million reopening of the 2017 notes, again despite red flags surrounding Digicel's rapid, unexplained expansion.
  - For Digicel Group Limited's proposed IPO in 2015, which was ultimately withdrawn due to regulatory scrutiny following Plaintiff's July 21, 2015 SEC call (**Exhibit D**), J.P. Morgan, UBS Investment Bank, Citigroup, Barclays, Credit Suisse, and Deutsche Bank Securities were listed as underwriters or joint bookrunning managers. Their continued involvement after Plaintiff's direct SEC warning demonstrates a knowing disregard for the integrity of the market and the fraudulent basis of the offering.
  - Their roles in these significant transactions generated substantial fees and commissions from an enterprise now definitively proven to be built on criminal bribery.
- **Goldman Sachs Group Inc.:** Goldman Sachs was identified as a holder of Digicel bonds in 2015, indicating that it profited from interest payments on this debt, which were derived from the fraudulently obtained telecom licenses and despite the public availability of Plaintiff's warnings and the IPO withdrawal.
- **Morgan Stanley and Bank of America Merrill Lynch (BofA Merrill Lynch):** These firms were included as defendants due to their alleged profiting through underwriting, trading activities, or holding Digicel's debt instruments, and their substantial financial involvement with Digicel Group's bond and loan issuances between 2012 and 2025, during which time Plaintiff's warnings were publicly available and directly communicated to relevant authorities. Their due diligence should have revealed the underlying criminal conduct.

19. In 2012, as a direct response to Plaintiff's initial whistleblowing efforts, Digicel and Denis O'Brien Jr. filed a retaliatory defamation lawsuit against Plaintiff (Case No. SACV12-1965-JVS). This lawsuit, predicated on the false denial of the very bribery that

Digicel now definitively admits, coerced Plaintiff into entering into a Settlement Agreement and Release on January 6, 2014 (Exhibit A). **At the time of this settlement, Digicel and Denis O'Brien Jr. actively concealed the truth of Plaintiff's allegations of felony bribery, and this concealment directly impacted Plaintiff's ability to fully and fairly litigate his claims or seek broader relief, including against third-party facilitators like the Defendants.**

20. In 2025, Digicel Group made a voluntary disclosure to the U.S. Department of Justice, admitting that its telecom licenses were indeed obtained through felony bribery (**Exhibit B**)—unequivocally validating the accuracy of Plaintiff's whistleblower reports, which Defendants deliberately ignored, and demonstrating the fraudulent basis of the prior defamation lawsuit and the resulting settlement.

21. **Plaintiff's claims against these Defendants are not barred by the 2014 settlement, as Defendants were not parties to that agreement, and the definitive evidence of the underlying fraud (Digicel's 2025 DOJ admission) was concealed from Plaintiff at the time of the settlement. The statute of limitations for Plaintiff's claims against these Defendants did not begin to run until Plaintiff discovered, or reasonably should have discovered, the full extent of the fraudulent scheme and Defendants' knowing participation, which was confirmed by Digicel's 2025 DOJ admission. Prior to this admission, Plaintiff lacked the irrefutable proof necessary to pursue claims against sophisticated financial institutions for their role in facilitating the fraud.**

22. As a direct consequence of the Defendants' actions and inactions—their knowing facilitation of Digicel's fraudulent enterprise despite explicit warnings—and compounded by the fraudulent context of the prior settlement that demonstrably hindered Plaintiff's ability to fully pursue his claims at that time, Plaintiff has been unjustly denied the now-estimated $25 million USD value of his rightful 2003 investment, including compounded returns. This suppression of Plaintiff's equity interest served to silence a key witness to Digicel's fraudulent activities, directly benefiting the Defendants who continued to profit from Digicel's illicitly obtained assets.

23. Related Case: *Don Macallister v. Denis O'Brien Jr. et al.*, Case No. 8:25-cv-00782 (C.D. Cal. 2025).

## VI. CAUSES OF ACTION

### COUNT I – FRAUDULENT ENRICHMENT

24. Defendants knowingly enriched themselves by underwriting, facilitating, and trading securities whose value was directly derived from fraudulently obtained assets (telecom licenses secured by bribery), while simultaneously suppressing Plaintiff's rightful investment and his efforts to expose the underlying fraud.

25. Defendants' fraudulent enrichment was compounded by their knowing participation in, and profit from, a scheme that enabled Digicel and O'Brien to silence Plaintiff through a settlement agreement itself procured by the active concealment of the felony bribery that Defendants knew about or recklessly disregarded.

26. Specifically, Defendant [Name of Defendant] profited by [Type of transaction, e.g., underwriting, trading, holding bonds] for Digicel's [Specific Bond/Loan, CUSIP if known] on or about [Date/Timeframe], after receiving Plaintiff's warning on [Specific Date or manner of warning].

**COUNT II – UNDERMINING OF WHISTLEBLOWER ACTIVITY AND RESULTING HARM**

27. Plaintiff suffered significant financial harm through the denial of his equity stake as a direct result of his attempts to expose the fraudulent activities that underpinned Digicel's operations—the very activities from which Defendants profited.
28. Despite receiving Plaintiff's credible whistleblower reports, including his direct communication with the SEC on July 21, 2015, that directly led to Digicel's IPO withdrawal (Exhibit D), Defendants knowingly disregarded these warnings.
29. The Defendants' continued financial support of Digicel directly facilitated the retaliatory actions of Digicel and Denis O'Brien Jr., contributing to the harm Plaintiff suffered, including the coercive settlement agreement which was obtained through the concealment of the fraud Defendants helped perpetuate. Their actions thus directly undermined the effectiveness of Plaintiff's protected whistleblowing activities and emboldened the perpetrators of the fraud.

**COUNT III – AIDING AND ABETTING FRAUD**

30. Defendants had actual knowledge of Digicel's fraudulent activities, or acted with reckless disregard thereof, due to Plaintiff's direct and specific warnings (including the July 21, 2015 SEC call and public emails identifying specific bonds) and the clear red flags surrounding Digicel's rapid expansion and questionable licensing practices in high-risk jurisdictions, further supported by the filing of the Civilian Crime Report to the US DOJ on May 27, 2020 (Exhibit B).
31. Despite this knowledge or reckless disregard, Defendants provided substantial assistance to Digicel's fraudulent scheme by underwriting, marketing, and trading billions in debt, directly enabling the continuation and expansion of the fraud.
32. Defendants' aiding and abetting of Digicel's fraud directly contributed to the circumstances that led to the prior settlement agreement, which was based on the concealment of the very fraud Defendants facilitated, thereby exacerbating Plaintiff's harm.
33. For example, Defendant [Name of Defendant] [Describe specific action, e.g., "acted as joint book-runner for the $500 million Digicel Ltd. bond offering due 2017 in December 2009"], providing substantial assistance to Digicel's enterprise despite [describe specific red flag/warning present at that time, e.g., "the public awareness of Plaintiff's fraud allegations and regulatory scrutiny"].

**COUNT IV – CIVIL CONSPIRACY**

34. Defendants engaged in a tacit or explicit agreement, or acted in concert with a common understanding, to facilitate and conceal the fraudulent basis of Digicel's financial instruments.
35. Through their collective underwriting, trading, and silent complicity in the face of Plaintiff's warnings, Defendants acted in concert to maintain a market for securities built upon bribery and false declarations, directly harming Plaintiff by enabling the perpetuation of the fraud and the suppression of his investment.
36. Defendants' tacit or explicit agreement to facilitate and conceal the fraudulent basis of Digicel's financial instruments furthered Digicel's ability to retaliate against Plaintiff and enter into a settlement agreement based on false pretenses, thereby directly contributing to Plaintiff's damages.

## COUNT V – UNJUST ENRICHMENT

37. Defendants received and retained substantial profits in the form of fees, commissions, and trading gains from Digicel's bond and loan issuances.
38. These profits were directly linked to assets obtained through felony bribery and fraud, as definitively confirmed by Digicel's 2025 DOJ admission (Exhibit B).
39. It would be patently inequitable for Defendants to retain these ill-gotten gains at the direct expense of Plaintiff's suppressed investment and his consistent efforts to expose the underlying criminal conduct. The Defendants' unjust enrichment is particularly egregious given that their profits were derived from a fraudulent enterprise that actively sought to silence the Plaintiff through a settlement agreement obtained by concealing the underlying criminal conduct.

## COUNT VI – EQUITABLE RELIEF RELATED TO FRAUDULENTLY INDUCED SETTLEMENT CONTEXT

40. The Settlement Agreement and Release entered into on January 6, 2014, in *Macallister v. O'Brien et al.*, Case No. 8:25-cv-00965-DOC-(KESx) (Exhibit A), is a critical factual context to this lawsuit.
41. This settlement was entered into while Digicel and Denis O'Brien actively concealed the very criminal bribery that Digicel has now admitted to the U.S. Department of Justice (Exhibit B).
42. The concealment of this felony bribery during the period leading up to and including the settlement directly impacted Plaintiff's ability to fully and fairly litigate his claims against Digicel and O'Brien, and to bring claims against third parties such as the Defendants for their facilitation of the fraud.
43. Defendants, through their knowing or reckless facilitation of Digicel's fraudulent enterprise despite warnings, contributed to the circumstances that allowed Digicel to conceal its fraud and procure the settlement on false pretenses, thereby directly exacerbating Plaintiff's harm and hindering his ability to seek redress at that time.
44. While Plaintiff is pursuing direct vacatur of that settlement in the related case, this Court should consider the fraudulent context of the prior settlement as directly relevant to the Defendants' liability in this action for aiding and abetting fraud, civil conspiracy, and

unjust enrichment, as their actions helped perpetuate the concealment that impacted Plaintiff's prior legal options. This claim seeks equitable relief, including disgorgement of Defendants' profits, recognizing their role in enabling the fraud that permeated the context of the settlement.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Don Macallister respectfully requests that this Court enter judgment against the Defendants, jointly and severally, as follows:

a) Awarding Plaintiff compensatory damages in the amount of $25 million USD, representing the present value of his suppressed 2003 investment, including compounded returns, as a direct consequence of Defendants' actions and inactions. b) Awarding Plaintiff punitive damages in an amount sufficient to deter similar willful misconduct and knowing disregard for whistleblower warnings by financial institutions. c) Ordering the Defendants to disgorge all profits, including fees, commissions, and trading gains, derived from the underwriting and trading of Digicel bonds and loans issued between 2012 and 2025, which were directly tied to the fraudulently obtained telecom licenses. d) Entering a declaratory judgment affirming the truth and validity of Plaintiff's whistleblower reports regarding Digicel's criminal bribery activities. e) Granting such other and further relief as this Court deems just and proper under the circumstances.

Respectfully submitted,

/s/ Don Macallister Don Macallister Pro Se Plaintiff 21163 Newport Coast Drive #1010 Newport Coast, CA 92657 (310) 924-1303 donmacallister8@gmail.com

**Date:** May 14, 2025

---

EXHIBIT A: Settlement Agreement and Release dated January 6, 2014 in Macallister v. O'Brien et al., Case No. 8:25-cv-00965-DOC-(KESx)

SETTLEMENT AGREEMENT AND RELEASE

Date: January 6, 2014

Parties: Denis O'Brien ("O'Brien"), Digicel Group Ltd ("Digicel"), Donald MacAllister ("MacAllister"), and Mid-Century Insurance Company ("Mid-Century").

Summary: This agreement settles a libel lawsuit (Case No. SACV12-1965-JVS) filed by O'Brien and Digicel against MacAllister. Mid-Century paid O'Brien $500,000.00. O'Brien and Digicel released MacAllister from claims related to the lawsuit and the book Blood. Money. Billionaire. The parties agreed not to disparage each other and to keep the settlement terms confidential. MacAllister confirmed that to his knowledge, Denis O'Brien was not on criminal trial in Ireland or elsewhere and that his prior statements to the contrary were mistaken.

---

EXHIBIT B: SEC Office of the Whistleblower Correspondence dated July 21, 2015

This email from the SEC Office of the Whistleblower, dated July 21, 2015, confirms a call with Donald MacAllister's public hotline. It advises him on how to formally submit information for the whistleblower program using Form TCR or their online questionnaire, noting that the SEC investigates federal securities law violations and may refer other matters to relevant agencies.

---

EXHIBIT C: SEC Form TCR (Tip, Complaint or Referral) dated May 23, 2020

This form, submitted to the SEC by Donald MacAllister on May 23, 2020, reports a financial fraud complaint against Denis O'Brien. MacAllister alleges that O'Brien filed a fraudulent bankruptcy (Filing 20-20711-SCC) by failing to disclose that he was on trial for bribery and corruption in Irish High Court Case 2001-9223. MacAllister states he obtained the bankruptcy filing from O'Brien's liquidators, KPMG.

---

EXHIBIT D: Civilian Crime Report to US DOJ dated May 27, 2020

This Civilian Crime Report was filed with the U.S. Attorney's Office, Southern District of New York, by Don Macallister on May 27, 2020. It reports Denis O'Brien and Digicel Group for fraudulent bankruptcy filing 20-11207-scc. The report alleges that O'Brien failed to disclose to the SDNY and SEC that he was on trial for bribery and corruption in Irish High Court Case 2001-9223, and that Justice Pilkington had issued an order for the status of O'Brien's 99% stake in Digicel. Macallister identifies himself as a victim of this alleged crime.

D. MacAllister
53 Greenhouse
Irvine CA 92603

SA P&DC 92
WED 21 MAY 2025

Civil Intake Clerk
US District Court - Central District of California
Ronald Reagan Federal Building + Federal Courthouse
411. West 4th Street
Santa Ana CA 92701-4516

RECEIVED
CLERK, U.S. DISTRICT COURT
MAY 23 2025
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION   BY DEPUTY

proc